David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*KATHLEEN L. WEST*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KATHLEEN L. WEST, | : Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| BOULDER DAM CREDIT UNION; NATIONSTAR MORTGAGE, LLC; EQUIFAX INFORMATION SERVICES, LLC, | |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit

Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. KATHLEEN L. WEST ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of BOULDER DAM CREDIT UNION ("BOULDER"), NATIONSTAR MORTGAGE, LLC ("NATIONSTAR") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") (or jointly as "Defendants") with regard to erroneously reporting derogatory credit information to national reporting agencies.

3. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v.*

*Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

5. This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

6. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Equifax has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

7. Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8. Defendant BOULDER is a corporation doing business in the State of Nevada.

9. Defendant BOULDER is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

10. Defendant NATIONSTAR is a corporation doing business in the State of Nevada.

11. Defendant NATIONSTAR is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

12. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

13. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## GENERAL ALLEGATIONS

14. On or about 9/26/2012, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 12-20972-mkn (the "Chapter 13" or "Bankruptcy").

15. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

16. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

17. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

18. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

19. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on 12/18/2015.

20. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

21. However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

22. Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on Defendant's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

23. The adverse information reported by Defendants was based on each Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan. Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

24. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

25. To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA") publishes standard guidelines for reporting data called the "Metro 2 Format."

26. The Metro 2 Format guidelines for credit reporting are nearly identical for reports made during the "Months Between Petition Filed and BK Resolution" and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. See CDIA Credit Reporting Resource Guide, page 6-20, 21.

27. Notably, the payment history and account status guidelines are the same, meaning that the "payment history" and "account status" should be reported the same way both during and after a bankruptcy proceeding. *Id*.

28. The only difference in reporting a pre-discharged debt and a discharged debt is to delete the balance (or report a balance of $0). *Id.*

29. Indeed, the guidelines direct furnishers to report an account status as it existed at the time the bankruptcy petition was filed and not the account status as it *would have* existed in the months following the filing of the petition if the petition had not been filed. *Id*.

30. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

31. Defendants did not conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below. To this end, the adverse reporting on the Plaintiff's report departs from the credit industry's own reporting standards and was therefore inaccurate under the CDIA's standards as well.

## THE EQUIFAX VIOLATIONS

### BOULDER Misreported Credit Information

### RE: Account No. 0000

32. In an Equifax credit report dated January 19, 2016, BOULDER inaccurately reported that there was an "actual payment amount" of $880, even though Plaintiff was discharged on 12/18/2015 and no payments were due or made on this account creating the misleading and false impression that a debt was still owed and due. *See* a true and correct redacted copy attached hereto as **"Exhibit 1"**.

33. Also, BOULDER inaccurately reported that there was a "scheduled payment amount" of $14,961, even though Plaintiff was discharged on 12/18/2015 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

34. BOULDER also reported that the Plaintiff was 30-59 days past due in October 2012. This was inaccurate, since the Plaintiff performed all obligations owed

to BOULDER after filing Chapter 13 and obtained a discharge. Moreover, BOULDER was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for BOULDER to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to BOULDER after filing the Chapter 13.

35. Further, BOULDER inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was November 2012, when the Plaintiff filed Bankruptcy on 9/26/2012. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date BOULDER caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). BOULDER's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

36. On or about March 8, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed BOULDER's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by BOULDER. *Id.*

37. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect

derogatory information be removed, corrected or deleted. *See* Equifax Dispute Letter, attached hereto as **"Exhibit 2"**.

38. Upon receiving the Equifax Dispute Letter, Equifax timely notified BOULDER of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

39. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

40. On or about April 10, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6077041753) that BOULDER and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6). *See* a true and correct redacted copy attached hereto as **"Exhibit 3"**.

41. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

42. BOULDER and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit reports. *Id.*

43. BOULDER and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i(a).

44. BOULDER and Equifax re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, BOULDER and Equifax still inaccurately reported that there was an "actual payment amount" of $880, even though Plaintiff was discharged on 12/18/2015. BOULDER and Equifax also still inaccurately reported that there was a "scheduled payment amount" of $14,961, even though Plaintiff was discharged on 12/18/2015. Also, BOULDER and Equifax still inaccurately reported that the Plaintiff's DLA was November 2012, when the Plaintiff filed Bankruptcy on 9/26/2012.

45. BOULDER and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a).

46. Due to BOULDER's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i(a), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i(a).

47. Plaintiff's continued efforts to correct BOULDER's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with BOULDER and Equifax were fruitless.

48. BOULDER's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

49. Also as a result of BOULDER's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

50. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, BOULDER and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E), § 1681i(a) and § 1681e(b).

## **NATIONSTAR Misreported Credit Information**
## **RE: Account No. 1271**

51. In an Equifax credit report dated January 19, 2016, NATIONSTAR inaccurately reported that the Plaintiff still owed an outstanding balance of $42,438 even though NATIONSTAR's debt was discharged in the

Bankruptcy. *See* **"Exhibit 1"**. It was therefore inaccurate for NATIONSTAR to report a balance any greater than $0.

52. NATIONSTAR also inaccurately reported that the Plaintiff was "past due" in the amount of $22,934. Since Plaintiff discharged NATIONSTAR's debt, there was a $0 balance due at the time NATIONSTAR reported the past due balance. Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

53. NATIONSTAR also inaccurately reported that there was a "scheduled payment amount" of $527, even though Plaintiff was discharged on 12/18/2015 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

54. NATIONSTAR also reported past due balances in June 2015 and October 2015. This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge. Moreover, NATIONSTAR was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for NATIONSTAR to report that the Plaintiff was delinquent after the Chapter 13 filing, since the Plaintiff fully performed under the Chapter 13 Plan.

55. Further, NATIONSTAR inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was April 2015, when the

Plaintiff filed Bankruptcy on 9/26/2012. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date NATIONSTAR caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). NATIONSTAR's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

56. On or about March 8, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed NATIONSTAR's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by NATIONSTAR. *Id.*

57. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted. *See* **"Exhibit 2"**.

58. Upon receiving the Equifax Dispute Letter, Equifax timely notified NATIONSTAR of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

59. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

60. On or about April 10, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6077041753) that NATIONSTAR and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6). *See* **"Exhibit 3"**.

61. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

62. NATIONSTAR and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit reports. *Id.*

63. NATIONSTAR and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i(a).

64. NATIONSTAR and Equifax re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, NATIONSTAR and Equifax still inaccurately reported that the Plaintiff still owed an outstanding balance of $42,438 even though NATIONSTAR's debt was discharged in the Bankruptcy. NATIONSTAR and Equifax also still inaccurately reported that the Plaintiff was "past due" in the amount of $22,934. Also, NATIONSTAR and Equifax still inaccurately reported that there was a "scheduled payment

amount" of $527, even though Plaintiff was discharged on 12/18/2015. NATIONSTAR and Equifax also still inaccurately reported that the Plaintiff's DLA was April 2015, when the Plaintiff filed Bankruptcy on 9/26/2012.

65. NATIONSTAR and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a).

66. Due to NATIONSTAR's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i(a), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i(a).

67. Plaintiff's continued efforts to correct NATIONSTAR's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with NATIONSTAR and Equifax were fruitless.

68. NATIONSTAR's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

69. Also as a result of NATIONSTAR's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the

Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

70. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, NATIONSTAR and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E), § 1681i(a) and § 1681e(b).

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

73. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

74. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

///

**TRIAL BY JURY**

75. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 6, 2017

        Respectfully submitted,

        By /s/ David H. Krieger, Esq.

        David H. Krieger, Esq.
        Nevada Bar No. 9086
        HAINES & KRIEGER, LLC
        8985 S. Eastern Ave., Suite 350
        Henderson, NV 89123
        Phone: (702) 880-5554
        FAX: (702) 385-5518
        Email: dkrieger@hainesandkrieger.com

        Attorney for Plaintiff
        *KATHLEEN L. WEST*